| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>Ronald I. LeVine, Esq.<br>210 River Street, Suite 11<br>Hackensack, New Jersey 07601<br>Attorney for Debtors | Order Filed on January 15, 2020<br>by Clerk,<br>U.S. Bankruptcy Court<br>District of New Jersey |
| In Re:<br><br>Sujay K. Sinha | Case No.: 19-11506SLM<br><br>Chapter: 13<br><br>Judge: Hon. Meisel |

AUTHORIZING
ORDER ~~APPROVING~~ TERMS OF A LOAN MODIFICATION WITH
SPECIALIZED LOAN SERVICING

The relief set forth on the following pages, numbered two (2) is hereby **ORDERED**.

**DATED: January 15, 2020**

*Stacey L. Meisel*
Honorable Stacey L. Meisel
United States Bankruptcy Judge

Page 2
Debtor: SUJAY K. SINHA
Case No.: 19-11506SLM
Caption of Order: ORDER ~~APPROVING~~ AUTHORIZING TERMS OF A LOAN MODIFICATION WITH SPECIALIZED LOAN SERVICING

**THIS MATTER** being opened to the Court by The Law Office of Ronald I. LeVine, Esq., attorney for the debtor herein, upon notice to Specialized Loan Servicing through its Attorneys, for entry of an Order ~~approving~~ authorizing the terms for the loan modification with Specialized Loan Servicing for the first mortgage on the debtor's property and the Court having reviewed the Motion and any evidence presented at the hearing on the Motion (the "Hearing") and having heard statements of counsel in support thereof; and it appearing that all secured parties having been given notice of the Motion; and good and sufficient cause having been shown for entry of the within Order;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1. All arrears to Specialized Loan Servicing shall be paid through the loan modification.

2. The Motion is granted ~~approving~~ authorizing the Loan Modification Agreement with Specialized Loan Servicing and attached as **Exhibit A**.

This Court shall retain jurisdiction with respect to any and all disputes may arise in connection with the provisions of this Order and the transactions approved hereby.

EXHIBIT A

After recording please return to:
SPECIALIZED LOAN SERVICING
LLC

8742 LUCENT BLVD, SUITE 300
HIGHLANDS RANCH, CO  80129

Prepared by:
SPECIALIZED LOAN SERVICING
LLC
CHAD MURRISON
8742 LUCENT BLVD, SUITE 300
HIGHLANDS RANCH, CO  80129
800-315-4757

———————————————[Space Above This Line For Recording Data]———————————————

# MODIFICATION AGREEMENT

Executed on this day: **November 13, 2019**
Borrower ("I"): **SHEFALI SINHA** whose address is **33 BEECH STREET, ELMWOOD PARK, NJ  07407** ("Borrower").
If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.
Lender or Servicer ("Lender"): **SPECIALIZED LOAN SERVICING LLC AS ATTORNEY IN FACT BANC OF AMERICA FUNDING CORPORATION 2006-5, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE** whose principal place of business and mailing address is **8742 LUCENT BLVD, SUITE 300, HIGHLANDS RANCH, CO  80129** ("Lender").
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **April 7, 2006**

Modification Agreement
Proprietary W3078H                              Page 1 of 10                              90386NJ 07/17



Original security instrument in the amount of $**235,000.00** and recorded on **May 5, 2006** in Book, Volume, or Liber No. **15862**, at Page **224** (or as Instrument No. **54906**) , in the Office of the County Clerk or Register of **BERGEN** County, State of **NEW JERSEY**.

Loan Number: **1018394851**

Property Address ("Property"): **33 BEECH STREET, ELMWOOD PARK, NJ 07407**

Legal Description: **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender, covenant and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B. Property Type: Single Family
    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program"));
    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
    B. I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

Modification Agreement
Proprietary W3078H                              Page 2 of 10                              90386NJ 07/17



3. **The Modification**. If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **November 1, 2019** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **December 1, 2019**.

   A. The new Maturity Date will be: **July 1, 2036**.

   B. The Total Principal Balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, if applicable in addition to any fees or costs that have been or will be incurred in connection with the enforcement of the security agreement including those costs and fees associated with the closing and dismissal of any foreclosure action as applicable and deferred principal and other deferred amounts from a prior modification, collectively, "Unpaid Amounts", if applicable) less any amounts paid to Lender but not previously credited to my Loan, as set forth hereunder.

   C. The Interest Bearing Principal balance of my Note will be **$255,500.00** (the 'Interest Bearing Principal Balance'). In addition to the Interest Bearing Principal balance of **$255,500.00**, any outstanding amounts inclusive of unpaid and deferred interest, fees, escrow advances and other costs as applicable shall be deferred. The total amount deferred through this agreement is **$5,145.95** and is known as (the 'Deferred Balance') and I will not pay interest or make monthly payments on this amount. The total amount payable under the note **$260,645.95** (the 'Total Principal Balance') is inclusive of the Interest bearing Principal Balance and the Deferred Balance. Interest at the rate of **3.875%** will begin to accrue on the new Interest Bearing Principal Balance as of **November 1, 2019** and the first new monthly payment on the new Interest Bearing Principal Balance will be due on **December 1, 2019**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 3.875% | 11/01/2019 | $1,048.06 | $775.88, may adjust periodically | $1,823.94, may adjust periodically | 12/01/2019 | 480 |

Borrower promises to make monthly payments of principal and interest per the above payment schedule beginning on **December 1, 2019**, and continuing thereafter on the same day of each succeeding month. I will make these payments every month per the above payment schedule, in addition to 1 final balloon payment, consisting of deferred principal in the amount of **$5,145.95** and additional unpaid principal amount of **$192,960.44.** The Balloon payment amounts stated are if all monthly payments have been made as scheduled. At the end of the term, any balance remaining will have to be paid.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. Your initial monthly escrow payment will be **$775.88**. Your initial total monthly payment will be **$1,823.94.**



The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest- only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

    D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

    F. If on **July 1, 2036**, ('Maturity' or 'Modified Maturity Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Modified Maturity Date.

4. **Additional Agreements.** I agree to the following:

    A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co- borrower is deceased; (ii) the borrower and co- borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

    B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

    C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

    D. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event

Modification Agreement
Proprietary W3078H                Page 4 of 10                90386NJ 07/17


*1018394851*

of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.



G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment

Modification Agreement
Proprietary W3078H                              Page 6 of 10                              90386NJ 07/17


*101839485 1*

    history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan (s); (iv) companies that perform support services for the Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/ or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

_____ (Seal)    Date: 11-25-2019
SHEFALI SINHA

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____ *Trustee of the*        _____ *Trust instrument dated*

_____ *For the benefit of*    _____ *(Borrower)*

Modification Agreement
Proprietary W3078H                    Page 7 of 10                        90386NJ 07/17

*1018394851*

## ACKNOWLEDGMENT

State of <u>NEW JERSEY</u>  §
County of <u>BERGEN</u>  §
  §

On this <u>25th</u> day of <u>NOVEMBER</u>, <u>2019</u>, before me <u>ANDREA C DALESSIO</u>, Notary Public, personally appeared **SHEFALI SINHA**, known or identified to me (or satisfactorily proven), to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he (or they) executed the same as his own act for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_____
Signature of Officer

<u>ANDREA C DALESSIO</u>
Printed Name

<u>NOTARY PUBLIC</u>
Title of Officer

(Seal)    My Commission Expires: <u>1/22/2021</u>

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**SPECIALIZED LOAN SERVICING LLC AS ATTORNEY IN FACT BANC OF AMERICA FUNDING CORPORATION 2006-5, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE**

By: _____    _____
                                    -Lender     Date of Lender's Signature

## ACKNOWLEDGMENT

State of _____           §
                              §
County of _____          §

This record was acknowledged before me on _____ by _____, as _____ of **SPECIALIZED LOAN SERVICING LLC AS ATTORNEY IN FACT BANC OF AMERICA FUNDING CORPORATION 2006-5, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE** a **DELAWARE** corporation, on behalf of the corporation.

_____
Signature of Notarial Officer

_____
Title of Officer

(Stamp)                My Commission Expires: _____

EXHIBIT A

BORROWER(S): SHEFALI SINHA

LOAN NUMBER: 1018394851

LEGAL DESCRIPTION:

STATE OF NEW JERSEY, COUNTY OF BERGEN, AND DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN LOT, PARCEL OR TRACT OF LAND, SITUATE AND LYING IN THE BOROUGH OF ELMWOOD PARK, COUNTY OF BERGEN, STATE OF NEW JERSEY, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEING KNOWN AND DESIGNATED AS LOTS 25 AND 26 IN BLOCK D. AS THE SAME ARE LAID OUT AND SHOWN ON A CERTAIN MAP ENTITLED "CORDOVA PROPERTY OF GEO. G. VAN RIPER, SADDLE RIVER TOWNSHIP BERGEN CO., N.J. L.S. MANGER C.E. AND WHICH MAP WAS FILED IN THE BERGEN COUNTY CLERK'S OFFICE ON SEPTEMBER 22, 1920, AS MAP NO. 1696.

(1) ALONG THE SOUTHEASTERLY LINE OF BEECH STREET NORTH 22 DEGREES 00 MINUTES 00 SECONDS EAST 50 FEET TO A POINT; THENCE
(2) SOUTH 68 DEGREES 00 MINUTES 00 SECONDS EAST 100.00 FEET TO A POINT; THENCE
(3) SOUTH 22 DEGREES 00 MINUTES 00 SECONDS WEST 50.00 FEET TO A POINT; THENCE
(4) NORTH 68 DEGREES 00 MINUTES 00 SECONDS WEST 100.00 FEET TO A POINT IN THE SOUTHEASTERLY LINE OF BEECH STREET TO THE POINT AND PLACE OF BEGINNING.

THE FOLLOWING NOTES ARE FOR INFORMATIONAL PURPOSES ONLY:

NOTE: BEING KNOWN AS LOT 13 IN BLOCK 1012 ON THE BOROUGH OF ELMWOOD PARK TAX MAP.
NOTE: BEING COMMONLY KNOWN AS 33 BEECH STREET, ELMWOOD PARK, NJ.

Parcel ID Number: block 1012 lot 13

ALSO KNOWN AS: 33 BEECH STREET, ELMWOOD PARK, NJ 07407